FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

01 FEB 13 PM 4: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

WILLENE M. HUDDLESTON, )
)
    Plaintiff, )
)
vs. )        CV 00-BU-1284-E
)
CLEBURNE COUNTY BOARD OF )        **ENTERED**
EDUCATION, et al., )
)        FEB 1 4 2001
    Defendants. )

## MEMORANDUM OPINION

This case is presently pending before the Court on motion for summary judgment, filed by Defendants. (Doc. 16) Plaintiff sued Defendants, alleging that they discriminated against her on the basis of her gender and retaliated against her for complaining of gender discrimination by failing to select her for promotion on numerous occasions. Her claims are brought pursuant to Title VII (42 U.S.C. § 2000e-2(a) & § 2000e-3), as well as 42 U.S.C. § 1983, for violations of her right to equal protection guaranteed by the Fourteenth Amendment. She also alleges disparate impact with regard to Defendants' selection procedures. Defendants ask this Court to dismiss all of Plaintiff's claims.

Based on its review of the parties submissions, the Court has determined that Defendants' motion for summary judgment is due to be granted and Plaintiff's claims are due to dismissed.

27

## I.   **SUMMARY JUDGMENT STANDARD**

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; 106 S. Ct. at 2553; *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the

nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson*, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.*, 50 F.3d 1579, 1581 (11th Cir. 1995)).

## II.   **STATEMENT OF FACTS**

Willene M. Huddleston is a well-qualified, long-term, employee of the Cleburne County Board of Education.  She earned an Associate's Degree from Southern Union State Junior College in 1969, a Bachelor of Science Degree from West Georgia College in 1971, a Masters Degree from West Georgia College in 1974, and an Educational Specialist Degree (Ed.S.) from Jacksonville State University in 1992.  Since obtaining her Ed.S., Huddleston has earned both "A" and "AA" administrator certifications for grades N-12 by completing additional post-graduate training at Jacksonville State University.  These certifications qualify Huddleston to serve as principal or assistant principal at any school within the system, whether an elementary school or a high school.

Since earning her administrator's certifications in 1992 and 1993, Huddleston has continued her educational training by engaging in additional post-graduate studies at the University of Alabama at Gadsden, the University of Alabama at Huntsville, and Oklahoma State University, as well as Kalingrad University and Rostov University in Russia.

In addition, Huddleston has taught elementary education at various schools within the Cleburne County system since 1970. Her performance evaluations during

this period consistently demonstrate her to be an effective educator.  Nothing in her personnel file reflects any performance-related criticisms or concerns.

Since obtaining certification to work as an administrator, Huddleston has consistently sought a promotion to an administrative position.  To date, she has sought promotion on at least twelve separate occasions.  Despite her educational background and exemplary work record, she has not been selected for any of the positions for which she has applied.  In this lawsuit, she challenges eight of those decisions as discriminatory and/or retaliatory.

Defendant Cleburne County Board of Education has five members.  Four of the members are elected by district; the fifth member is elected at large.  The Superintendent of Education for Cleburne County is also elected at large.

Defendant Danny Mobley is the current superintendent of the Board of Education.  He was elected to this position in June of 1996.  Defendant Robert L. Morton was the superintendent immediately before Mobley.  Defendant Glenn Robinson has been Chairman of the Cleburne County Board of Education for the past seven years.  The remaining individual Defendants are all current or former Board members.

Within the Cleburne County school system, there are two high schools (Cleburne County High School and Ranburne High School), four elementary schools (Cleburne County Elementary School, Pleasant Grove Elementary School, Fruithurst Elementary School, and Ranburne Elementary School), and a technical

school.  The elementary schools are kindergarten through 6th grade, and the high schools are 7th grade through 12th grade.  The school system has approximately 300 employees and approximately 2,500 students.  The two high schools have both an assistant principal and a principal.  The assistant principal at Cleburne County High School is a full-time position; the assistant principal at Ranburne County High School is a part-time position.  The elementary schools only have a principal.

All administrative vacancies are posted for two weeks.  Among other things, the job posting sets forth the minimum educational requirements for the position. Persons who respond to the job posting are provided an application to complete along with four reference sheets to be used in obtaining references.  Candidates who meet the minimum qualifications for the position are given an opportunity to interview with the superintendent and members of the Board of Education.

During the interview, the superintendent asks each candidate the same questions.  The members of the Board are permitted to ask follow-up questions. Following the interviews, the members of the Board discuss each candidate and usually reach a consensus.  The Superintendent then makes a recommendation as to which candidate he believes is the most qualified, and the Board votes on the recommendation.

In evaluating candidates for the position of principal, Mobley considers each candidate's experience directly related to the vacancy, work ethic, communication skills, references, and performance during his or her interview.  A candidate's

education is taken into account in determining whether he or she meets the minimum qualifications for the position.   Mobley does not use education to distinguish among candidates, unless all other factors are equal.

The selection process for assistant principals is slightly different than for principals.   The two high school principals are responsible for interviewing the applicants and selecting the most qualified candidate for the position of assistant principal.   Unless the superintendent disagrees with the principal's selection, the superintendent recommends that individual to the Board.   Assistant principals are paid a $1,000 per year supplement over and above their salary as a teacher.

Cleburne County High School has also utilized some of its teachers to perform the administrative duties of an assistant principal on a part-time, unpaid basis.  The Board does not create a separate position for this purpose or pay any additional amount to the individual who performs these duties in addition to his or her regular teaching duties.  The principal of Cleburne County High School decides – without approval from the Board – whether to have one of his teachers perform additional administrative duties.   The decision depends upon whether there is a need for such an individual, whether a teacher is interested in gaining administrative experience, and whether the teacher's class schedule can be arranged so that he or she can also do administrative work.  Jimmy Pirkle, a former principal of Cleburne County High School, allowed several of his teachers to gain administrative experience in this manner: Dennis Magouirk, Scott Coefield, Adam Dasinger,

Tammy Coefield, Brandon Bedford, and Diane Turley.  This unpaid, part-time position is never posted and the selection appears to be largely -- if not entirely -- the principal's subjective decision.

Several of Plaintiff's witnesses have described the selection process for principals and assistant principals in the Cleburne County school system as a "good old boy" network.  Of course, Defendants dispute this characterization of the selection system.

During the period from 1985 until 1999, of the twenty-two vacancies in principal or assistant principal positions filled in Cleburne County, only two women were selected.  Only one of these two women was still a principal at the time the motion for summary judgment was submitted.  The other female principal was non-renewed after two years, without explanation, despite excellent evaluations from the superintendent.  Of the twenty vacancies filled by men, approximately two-thirds (at least thirteen) involved promotions of former male coaches.  Moreover, these male administrators have followed essentially the same path to promotion.  A path that Plaintiff claims is unavailable to qualified females in the school system.

Since being elected superintendent in June of 1996, Mobley has made recommendations to the Board concerning eleven administrative positions (7 principals, 3 assistant principals, and 1 transport supervisor/technical coordinator).  In each case, the Board has unanimously approved Mobley's recommendation.

Although Plaintiff applied for all of these vacancies, she is not making a claim as to all of them.  Only the positions at issue are discussed below.

### 1.   Principal of Pleasant Grove Elementary School (1996-97)

The Board considered six candidates for Principal of Pleasant Grove Elementary School: Plaintiff, Scott Coefield, Dennis Magouirk, Mary Harrington, Hugh McWhorter, and John Skinner.  Mobley recommended Dennis Magouirk to the Board, and the Board unanimously approved the recommendation on July 9, 1996. The unsuccessful candidates were notified of the decision by letter of July 15, 1996.

Dennis Magouirk has been employed by the Cleburne County Board of Education since 1975. He was a teacher and assistant coach from 1975 until 1981. From 1981 until 1988, he was a teacher, head football coach, and athletic director at Cleburne County High School.  From 1988 until his promotion to Principal of Pleasant Grove Elementary School, he was the assistant principal, head football coach, and athletic director at Cleburne County High School.  Magouirk has a bachelor's degree, a master's degree in physical education, and a master's degree in administration.

For the first few years of his tenure as assistant principal at Cleburne County High School, Magouirk was an unpaid, part-time assistant principal.  Magouirk volunteered to perform these duties, without pay, to gain administrative experience. One of Magouirk's primary responsibilities as assistant principal of Cleburne County High School was handling discipline.

Mobley selected Magouirk, over the other candidates, for recommendation to the Board for several reasons. Magouirk already had several years of experience as an assistant principal. As assistant principal, he successfully performed most of the duties that he would be expected to perform as a principal, such as handling discipline, bus problems, parent problems, and student problems. According to Mobley, the fact that Magouirk had initially volunteered his time as an assistant principal to gain administrative experience demonstrated that Magouirk had a strong work ethic. Mobley also stated that Magouirk's coaching experience demonstrated good communication skills and the ability to deal effectively with the public and parents. Additionally, he said that Magouirk had a good interview.

Mobley testified that he did not select Plaintiff in part because she did not interview as well as the other applicants. He testified that several of her answers were not responsive to the questions and that she did not do a good job explaining to the Board how she would implement a student discipline policy. This criticism of her interviewing skills is not shared by Robinson and Plaintiff disputes Mobley's assessment of her interview.

### 2. Assistant Principal of Cleburne County High School (1996-97)

Dennis Magouirk's promotion to Principal of Pleasant Grove Elementary School left an assistant principal vacancy at Cleburne County High School. Jimmy Pirkle, then principal of Cleburne County High School, was responsible for interviewing candidates for the assistant principal position and making a

recommendation to Mobley and the Board.  Plaintiff, Coefield, Huddleston, Turley, Adam Dasinger, and Bill Zenn applied for the job.  Pirkle recommended to Mobley that Coefield should be promoted.  Mobley, in turn, recommended Coefield to the Board, which unanimously approved the recommendation on August 5, 1996.

Pirkle selected Coefield  over the other candidates because he had been performing most of the duties of assistant principal on an unpaid, part-time basis since 1994.  Coefield had approached Pirkle in 1994 and had asked to assist with administrative duties to gain experience.

### 3.    Principal of Fruithurst Elementary School (1997)

This position became available in the middle of the 1996-97 school year.  The Board considered the following candidates: Plaintiff, Tim Smith, John Skinner, Coefield, Mary Harrington and Rayburn McCormick.  Mobley recommended Smith to the Board, and the Board unanimously approved the recommendation in January 1997.

Before Mobley recommended Smith to the Board, the Board had reached a concensus that Smith and Coefield were the top two candidates and that either one of them would have been a good choice for the job.  Smith has been employed as a teacher and coach by the Cleburne County Board of Education since 1975.  He has a Bachelor of Science degree in Education, a Master of Science degree in Education, and an Educational Specialist degree.  He received his administration certification in 1993.  Mobley thought he performed well in his interview.

Page 10 of  34

Coefield has been employed by the Cleburne County Board of Education as a teacher and a coach since 1989. He has a Bachelor of Science degree in Social Sciences and a master's degree in Social Sciences and Administration, which he received in 1994.

### 4.   Principal of Fruithurst Elementary School (1997-98)

Despite being offered a contract for another year, Tim Smith left his principal position to return to his former position at Ranburne. The Board considered Plaintiff, Mary Harrington, Coefield, John Skinner, and Turley. Mobley recommended Coefield to the Board, and the Board unanimously approved his recommendation on June 26, 1997.

Mobley selected Coefield for recommendation to the Board because he had prior administrative experience by virtue of serving as assistant principal at Cleburne County High School. He also demonstrated good communication skills, answered questions well, and had good ideas in his interview. Additionally, Coefield had been the second choice for the position when Smith was promoted.

### 5.   Assistant Principal of Cleburne County High School (1997-98)

Coefield's promotion to Principal of Fruithurst Elementary School left a vacancy for an assistant principal position at Cleburne County High School. Plaintiff, Brandon Bedford, and Dasinger applied. Pirkle recommended Adam Dasinger to Mobley. Mobley, in turn, recommended Dasinger to the Board, which unanimously approved the recommendation on July 15, 1997.

Pirkle recommended Dasinger for the position, because Dasinger had already been  performing most of the assistant principal duties on an unpaid, part-time basis, like Magouirk and Coefield.   Dasinger had previously approached Pirkle about assuming these administrative duties because he was working on his administrative degree and he was required to perform a certain number of hours of administrative work.  Pirkle thought Dasinger did a good job in that role.

### 6.    Principal of Cleburne County High School (1998-99)

Pirkle retired in May of 1998, leaving a vacancy for principal at Cleburne County High School.  The Board considered the following candidates: Plaintiff, Harrington, Turley, Magouirk, Coefield, Hugh McWhorter, Bill Ayers, and Raymond J. Phillips.   Mobley recommended Magouirk to the Board, and the Board unanimously accepted the recommendation on May 12, 1998.

Mobley recommended Magouirk primarily because of his past experience as assistant principal at Cleburne County High School.  He had already developed a relationship with the faculty and had handled discipline at Cleburne County High School.   Moreover, he had been successful as principal of Pleasant Grove Elementary School.

Plaintiff contends that the posting of the position for principal at Cleburne County High School was a sham because Magouirk was pre-selected to fill the principal vacancy.  Plaintiff has presented evidence that the notice announcing the principal vacancy at Cleburne County High School also announced a vacancy in the

position of athletic director and coach.  On the date the vacancy was announced, Magouirk was employed as the principal of Pleasant Grove Elementary and as athletic director and coach of Cleburne County High School.  Magouirk confirms these duties in his deposition.  The permissible inference from these facts is that Defendants knew that Magouirk would be selected for the principal position at the time it was posted, otherwise they would not have known of the vacancy in the athletic director/coach position.

### 7.   Principal of Pleasant Grove Elementary School (1998-99)

Magouirk's promotion to Principal of Cleburne County High School left a vacancy for Principal at Pleasant Grove Elementary School.  The Board considered the following candidates: Plaintiff, Rayburn McCormick, Lynda Lowery, McWhorter, Harrington, Dasinger, Teresa Lloyd, Turley, Bedford, and Gary Bachus.  Mobley recommended Dasinger to the Board, and the Board unanimously approved the recommendation on June 9, 1998.

The Board narrowed its decision down to Dasinger and McWhorter.  Mobley leaned in favor of Dasinger because of his track record as the assistant principal at Cleburne County High School.  He had handled the discipline program successfully in that role.  McWhorter did not have as much administrative experience.  Dasinger demonstrated good communication skills in his interview.  He also received a good recommendation from the former principal Pirkle.

### 8.    Assistant Principal of Cleburne County High School (1998-99)

Dasinger's promotion to principal of Pleasant Grove Elementary School left a vacant assistant principal position at Cleburne County High School.  As principal of Cleburne County High School, Magouirk interviewed Plaintiff, Turley, Jerry Hinkle, Bachus, and a fifth candidate who was an assistant principal at an elementary school outside of the Cleburne County school system but whose name Magouirk cannot recall.   Magouirk recommended Hinkle to Mobley.   Mobley, in turn, recommended Hinkle to the Board, which unanimously approved his recommendation.

During his interview with the candidates, Magouirk explained the responsibilities of the position.  He explained that the job consisted of discipline at the high school, supervision of the lunchroom and break areas, teacher evaluations, supervision of athletic events, and taking up money at athletic events.  Turley withdrew her application because she did not want to perform the after-school duties.

Bachus and Hinkle were the top two candidates.   Bachus had some experience dealing with senior high and junior high students.  However, Bachus lived a long way from Cleburne County High School.  Magouirk and Bachus discussed this issue in Bachus's interview. Magouirk was not certain whether Bachus would accept the job if offered to him.

Hinkle had been an assistant principal and had assumed some principal duties at Anniston High School.  At the time of his interview, he was the assistant principal at Saks High School.  His everyday duties in that position were a lot like the everyday duties of the assistant principal position at Cleburne County High School.  Based on this directly-relevant experience, and the references Magouirk checked, Magouirk recommended Hinkle to Mobley.

Plaintiff presented evidence that many of Cleburne's present male administrators share a connection to Mobley through social interaction outside the work environment.  For example,  Mobley and Magouirk have known each other since 1975 and they have developed a close personal friendship.  In the past 10 years, they frequently spend time together, playing golf or fishing.  Similarly, Coefield, promoted by Mobley to the position of principal at Fruithurst Elementary in June 1997, is also Mobley's frequent golfing partner and occasional social guest. Mobley also plays golf with the assistant superintendent, Rudy Payne.  Like Magouirk, Mobley has known Pirkle for almost thirty years.  In addition to regularly playing golf together, Mobley and Pirkle operate and co-manage a fireworks business, working together three or four weeks a year.

Until the last election, the Cleburne County School Board and its superintendent were all men.  At least since 1993, the process used by the superintendent to select administrators has involved only the superintendent and the all male members of the Board of Education.  These men have historically

determined who would be selected for the administrative positions of principal and assistant principal within the school system.

Plaintiff contends that men in the Cleburne County school system are afforded preferences in training for administrative positions. For example, male principals typically leave males in charge during their absences. Male coaches are freed from homeroom duties by having hall-monitoring responsibilities assigned to them. Males are given walkie-talkies with which to communicate with one another, while women are never allowed to use them. When female staff inquired as to why women were not allowed freedom from homeroom responsibilities, Pirkle told them that it was because "the guys" were monitoring the unloading and loading of buses. Although women are certainly capable of monitoring buses, they are seldom, if ever, allowed to perform these duties.

Plaintiff contends that preferential treatment of males extends in a manner designed to assist them in obtaining promotions to administrative positions. She argues that the Board follows an obvious pattern when grooming male candidates for promotion. Typically, this grooming process begins with the assignment of unpaid administrative duties at Cleburne County High School. When an opening occurs in the assistant principal's position, the unpaid administrator is typically promoted as "most qualified" candidate. When an elementary principal position later opens, the assistant principal at the high school usually gets promoted. When a principal position later becomes vacant at one of the high schools, an elementary

school principal is typically promoted. This system has perpetuated male domination in the administrative positions within the school system.

For example, Pirkle, Magouirk, Coefield, and Dasinger were each given the opportunity to serve as unpaid, part-time assistants under the principal of Cleburne County High School before getting promoted to a paid assistant principal position. There is no posting mechanism or other system that allows candidates interested in performing these administrative duties the opportunity to apply or compete for these responsibilities. Each of these unpaid assistants were later awarded promotion to the paid position of assistant principal, based upon their "direct" experience in the unpaid position. Therefore, it appears that, generally, unpaid, part-time work as an assistant principal is a requirement to promotion to a paid, administrative position.

Mobley admits that Plaintiff has higher academic qualifications, more experience in the classroom, and longer tenure with the school system than any of the male candidates he recommended for principal or assistant principal during the period he has served as the superintendent of the Cleburne County School System.

In deposition, Mobley testified that in public meetings Plaintiff acted in a manner that caused him concern about her suitability for promotion to administrative positions. He complains that she acted in a derogatory, sarcastic manner and that she accused him of having spoken to her sharply and critically. There is evidence that after an interview Plaintiff said something to Mobley about the old boy network.

While Mobley agrees it is not improper for Plaintiff to address her concerns regarding the manner in which he has treated her, he believes Plaintiff's comments indicate a non-cooperative attitude that is inappropriate.

Diane Turley, who attended the meetings about which Mobley complains, declared under penalty of perjury that she personally observed Plaintiff ask questions to Mr. Mobley in the course of public meetings involving the Board.  At no time did she ever observe Plaintiff act unprofessionally, discourteously, or otherwise in a manner that could be described as rude or abrasive toward Mr. Mobley or any other official or administrator associated with the Board.

Jo-Anne Harper, who attended the same salary meetings, has observed Plaintiff interacting with her peers both in formal and in informal settings over the years.  In the course of her interaction with and observation of Plaintiff, she has never observed her be rude, abrasive, unprofessional, or otherwise disrespectful toward any colleague, administrator, official, or other person associated with the county school system.  To the contrary, according to Harper,  Plaintiff has acted as a peace-maker during meetings regarding the salary matrix.  Whenever Plaintiff has spoken with the Board in Harper's presence, she has always acted professionally, spoken articulately, and otherwise presented herself in a manner befitting the teaching profession.

For his part, Rudy Robinson, Chairman of the Board of Education, confirms Turley and Harper's accounts.  He confirms that Plaintiff has always been

professional and courteous during interviews, maintained friendly relationships with members of the Board, and never acted rudely or unprofessionally. Robinson's testimony conflicts with Mobley's allegations that Plaintiff performed poorly in interviews.

Contrary to Mobley's account, Robinson testified that he could only recall one instance in which Plaintiff failed to directly answer a question, although he could not identify in which interview she failed to answer a question. He testified, however, that he could not recall the question, and therefore could not say whether the question even called for Plaintiff's response. Other than this single instance, Robinson recalls no occasions when Plaintiff failed to respond appropriately to questioning in an interview.

In response to the charges of discrimination filed by Plaintiff on December 31, 1996, June 17, 1997 and December 21, 1998, the EEOC conducted an investigation, which included an on site inspection of documents and interviews with witnesses. As a result of this investigation, the EEOC's District Director, Cynthia G. Pierre, issued a Determination on June 30, 1999, which states:

> I have determined that the evidence obtained in the investigation **establishes reasonable cause to believe that Charging Party was denied promotions in violation of Title VII** of the Civil Rights Act, as alleged.
>
> Like and related to Charging Party's allegations, and arising our of this investigation, I have determined that **Respondent discriminates against females as a class**

> **by failing to promote them to assistant principal and principal positions.**

When conciliation between the parties proved unsuccessful, the EEOC issued a single Notice of Right-to-Sue as to all three charges on February 15, 2000.

## III.   DISCUSSION

### A.   TITLE VII INDIVIDUAL DEFENDANTS

Defendant contends that Plaintiff's Title VII claims against the individual Defendants are due to be dismissed on the ground that Plaintiff may not sue individuals under Title VII. Plaintiff contends that she does not seek redress against individuals under Title VII, and, to the extent her complaint is interpreted as such, those claims are due to be dismissed.

Therefore, Defendants' motion for summary judgment as to Plaintiff's Title VII claims against the individual Defendants – Danny Mobley, Robert L. Morton, Glenn R. Robinson, H. Thomas Bennett, Ted Campbell, Gerald Robinson, Diane Williamson, Danny Harris, and Robby Benefield – is due to be granted.

### B.   ROBERT L. MORTON

Defendants move to dismiss all claims against Robert L. Morton because he played no role in the challenged decisions. Plaintiff concedes that, because he played no role in the challenged decisions, Morton is due to be dismissed.

Therefore, Defendants' motion for summary judgment as to all claims asserted against Robert L. Morton is due to be granted.

## C.   PUNITIVE DAMAGES

Defendants argue that Cleburne County Board of Education is entitled to summary judgment on any claim of punitive damages on the grounds that such damages are not recoverable against local government entities under Title VII or § 1983.  Plaintiff has responded that she does not seek punitive damages against the Cleburne County Board of Education or any of its officials for actions taken in their official capacity.  She contends that her claim for punitive damages lies against only those Defendants sued in their individual capacity.

Therefore, Defendants' motion for summary judgment asking the Court to dismiss all claims for punitive damages against Cleburne County Board of Education and the official-capacity Defendants is due to be granted.

## D.   TIME-BARRED CLAIMS

### 1.   Title VII Retaliation

Defendants contend that Plaintiff's claims alleging retaliation based on Defendants' actions before December 19, 1996 -- 180 days before Plaintiff filed her first EEOC charge alleging retaliation -- are time barred.  Plaintiff does not oppose dismissal of her retaliation claims based on two promotions occurring before December 19, 1996.  Therefore, Plaintiff's retaliation claims based on Defendants' failure to promote her to the principal position at Pleasant Grove Elementary in July 1996 and Defendants' failure to promote her to the assistant principal position at Cleburne County High School in August 1996 are due to be dismissed.

### 2.    Section 1983 Claims

Defendants contend that Plaintiff's claims alleging sex discrimination and retaliation based on Defendants' actions before May 10, 1998 -- two years before Plaintiff filed her complaint -- are time barred.   Plaintiff does not oppose dismissal of her sex discrimination and retaliation claims based on promotions occurring before May 10, 1998. Therefore, Plaintiff's sex discrimination and retaliation claims based on Defendants' failure to promote her prior to May 10, 1998, are due to be dismissed.

### E.    DISPARATE TREATMENT

Plaintiff alleges that Defendants, on the basis of her gender and in retaliation, failed or refused to promote her to the following positions:

1.    Principal – Pleasant Grove Elementary School (July 1996)

2.    Assistant Principal – Cleburne County High School (August 1996)

3.    Principal – Fruithurst Elementary School (January 1997)

4.    Principal – Fruithurst Elementary School (June 1997)

5.    Assistant Principal – Cleburne County High School (Summer 1997)

6.    Principal – Cleburne County High School (Summer 1998)

7.    Principal – Pleasant Grove Elementary School (Summer 1998)

8.    Assistant Principal – Cleburne County High School (Summer 1998)

Doc. 1, ¶¶ 6,18-21,  see also Doc. 18, pp. 8-19.  Plaintiff alleges that she was denied these positions either on the basis of her discrimination – in violation of Title

VII and the Equal Protection Clause, and/or in retaliation for protected activity in violation of Title VII. Defendants claim that Plaintiff cannot show that the reasons offered for her non-selection to such positions was pretextual.

"A plaintiff may overcome the employer's asserted legitimate reasons and avoid judgment as a matter of law 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999)(*quoting Combs*106 F.3d at 1528 (quoting *Burdine*, 450 U.S. at 256, 101 S. Ct. 1089)).

> A plaintiff, relying on evidence that the employer's proffered reasons are unworthy of credence as the basis for an inference of intentional discrimination, will obviously only succeed if there is sufficient evidence for a reasonable person to conclude that the employer's proffered reasons were not the basis for the employment decision. To satisfy this threshold showing of pretext, a plaintiff may discredit the employer's proffered legitimate reasons by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the employment decision.

*Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1564 (11th Cir. 1995)(Johnson, J., concurring). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

Page 23 of  34

Recently, the Eleventh Circuit has provided further instructions to the Court

regarding the requirements for a showing of pretext in a failure to promote case:

> In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position that she wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex. *See Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir.2000). We have explained that "a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997), *cert. denied, sub nom.*, *Combs v. Meadowcraft Co.*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998); *see also Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999), *cert. denied*, --- U.S. ----, 120 S. Ct. 1962, 146 L. Ed. 2d 793 (2000) (emphasizing that courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."); *Deines v. Texas Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 281 (5th Cir.1999) (explaining that "it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position.... The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.")
>
> Nevertheless, *evidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting the plaintiff was pretextual. See Alexander*, 207 F.3d at 1340; *see also Walker v. Mortham*, 158 F.3d 1177, 1190 (11th Cir.1998), *cert. denied*, --- U.S. ----, 120 S. Ct. 39, 145 L. Ed. 2d 36 (1999)(" 'The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination' ") (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258-59, 101 S. Ct. 1089, 1096-97, 67 L. Ed. 2d 207 (1981)); *see also Taylor*, 175 F.3d at 868 (stating that evidence of

plaintiff's superior experience "would permit a jury to disbelieve" that the employer actually relied on the chosen candidate's experience when it promoted him).

Other circuits have more clearly articulated the evidentiary burden a plaintiff must meet in order to prove pretext by showing she was substantially more qualified than the person promoted. *See Fulton County*, 207 F.3d at 1340. In *Deines*, for example, the Fifth Circuit affirmed the district court's instruction to the jury stating that "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." 164 F.3d at 280. The court explained that the phrase

"jump off the page and slap [you] in the face" . . . should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question. This evidentiary standard does not alter the plaintiff's evidentiary burden to prove the fact of intentional discrimination by a preponderance of the evidence. Instead, the standard only describes the character of this particular type of evidence that will be probative of that ultimate fact.

*Id.* at 280-81.

*Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1253-54 (11th Cir. 2000).

Defendant has articulated specific, nondiscriminatory reasons for each of the

employment decisions at issue in this case. Plaintiff argues that these reasons are

pretext for the following reasons.

**1.    Plaintiff possessed outstanding objective qualifications for an administrative position that match or exceed those of any candidate selected for promotion.**

The Court has reviewed the record and found that Plaintiff's qualifications were not "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Lee*, 226 at 1254 (citation omitted).  For all but one of the promotions at issue in this case, Defendants selected a candidate with administrative experience; Plaintiff does not have administrative experience. Moreover, the Court finds that Plaintiff's qualifications are not substantially greater than those of Tim Smith, selected for the position of principal at Fruithurst Elementary School, who did not have administrative experience.   Therefore, Plaintiff's comparative qualifications are not sufficient to rebut Defendants' articulated reasons for its selection decisions.

### 2.    Defendants' reliance on prior experience is pretextual since the procedure by which such experience is gained is discriminatory.

The record suggests Defendants' selection procedures for the unpaid, part-time assistant principal position may have a discriminatory impact on women and/or that such procedures are intentionally used to discriminate against women. However, the complaint and Plaintiff's submission in opposition to Defendants' motion for summary judgment do not assert a claim based on Plaintiff's failure to be selected to fill an unpaid, part-time assistant principal position.

While the Court has considered evidence of discrimination with regard to the selection of the unpaid, part-time assistant principal, the Court finds that such

evidence does not meet "head-on" Defendants' articulated reasons for selecting men to fill the positions at issue; it suggests that Plaintiff did not acquire the experience and training offered to men selected to fill the positions at issue. Such a suggestion would seem to buttress Defendants' assertion that certain selections were made on the basis of prior administrative experience, that Plaintiff did not possess. Whether Plaintiff has a disparate treatment claim based on her failure to be selected to receive the training and experience offered to men selected to serve as the unpaid, part-time assistant principal is not an issue before this Court.

### 3. Mobley's contention that Plaintiff did not interview well and that she was discourteous, unprofessional, and uncooperative is disputed and Mobley, the decisionmaker, treats women employees as less than equal to men employees.

The Court has considered Plaintiff's evidence that Mobley treated women less favorably than men. However, this evidence is presented in the form of broad, general statements and is not sufficient to allow an inference that the articulated reason for the specific promotions recommended by Mobley and approved by the Board of Education is not the true reason for the promotion decisions. Also, the Court finds, for purposes of summary judgment, that Plaintiff's interview was acceptable and that she was not discourteous, unprofessional, and/or uncooperative. However, this evidence is not sufficient to demonstrate that Defendants' articulated reasons for not promoting Plaintiff is a pretext.[1]

---

[1]The Court notes that none of the articulated reasons for not promoting Plaintiff contained in Defendants' brief in support of its motion for summary judgment contend

Page 27 of  34

### 4.    Cleburne County Board of Education has a history of only hiring men to administrative positions.

The Court has considered Plaintiff's evidence that Defendants have selected men to fill most of the recent administrative positions.  However, this evidence, which is not supported by any statistical analysis, is not sufficient to demonstrate that Defendants' articulated reasons for the selection decisions is pretextual.

### 5.    The EEOC found "reasonable cause" to find that Plaintiff was denied promotions on the basis of her gender.

The EEOC found "reasonable cause to believe that [Plaintiff] was denied promotions in violation of Title VII." Doc. 22, Exh. 13, p.1.  Further, the EEOC found that Cleburne County Board of Education "discriminates against females as a class by failing to promote them to assistant principal and principal positions." *Id.* Nothing in the record indicates what evidence the EEOC relied upon in making its determination.  Therefore, the EEOC cause finding has little, if any, probative value[2] and is not substantial evidence sufficient to

---

that Defendants did not promote Plaintiff because of a bad interview or because she was discourteous, unprofessional, and/or uncooperative.  *See* Doc. 18, pp. 25-29.

[2]The Ninth Circuit has recently held:

The EEOC letter in this case stated simply that "The Commission's investigation finds reasonable cause to believe that [Quaker] has violated the [ADEA].  The Commission further finds that employees over the age of 40, as a class, were laid off in violation of [ADEA]." It is impossible from this letter to know what facts the EEOC considered and how it analyzed them.  Examining similarly conclusory EEOC letters, other circuits have concluded that when the letters only report "bare conclusions," they have little probative value. *See Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 201-02 (5th Cir.1992); *see also Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir.1988).  In previous cases, we have upheld summary judgment in cases in which the EEOC itself has brought suit. *See, e.g., EEOC v. Insurance Co. of N. Am.*, 49 F.3d 1418 (9th Cir.1995).  If the EEOC's suing is insufficient to create a genuine issue of material fact,

withstand Defendants' motion for summary judgment. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283-84 (9th Cir. 2000); *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304, 1309 (8th Cir.), *cert. denied* 469 U.S. 1041, 105 S. Ct. 525, 83 L. Ed. 2d 413 (1984).

The ultimate question in this case is whether Defendants failed to select Plaintiff for the specific positions at issue because of her gender or because she engaged in protected activity. The Court makes no determination that Plaintiff was not discriminated against and/or that Defendants procedure for selecting unpaid, part-time assistant principals is intentionally discriminatory or has an unintended discriminatory impact on women. However, with regard to the positions at issue in this case, Plaintiff has not demonstrated to this Court substantial evidence from which a reasonable jury could find that Defendants' articulated reasons for Plaintiff's non-selection to the positions at issue were a pretext for intentional discrimination.

### F.   DISPARATE IMPACT

#### 1.   Section 1983

Defendants contend that Plaintiff's § 1983 claims for disparate impact are due to be dismissed because  a § 1983 claim, alleging violations of the Fourteenth Amendment, requires proof of intentional discrimination.  Plaintiff concedes that

---

then, a priori, a conclusory EEOC reasonable cause letter, at least by itself, does not create an issue of material fact.

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283-84 (9th Cir. 2000).

such claim is due to be dismissed.  Therefore, Defendants' motion for summary judgment is due to be granted as to Plaintiff's § 1983 disparate impact claim.

### 2.    Title VII

Defendants contends that Plaintiff's disparate impact claim is due to be denied because Plaintiff "cannot establish a significant statistical disparity or identify a specific employment practice responsible for such disparity."  Doc. 18, p. 31. Plaintiff contends that she has identified a specific employment practice -- "informal training procedure that gives preference to male coaches, to the exclusion of qualified women."  Doc. 21, p. 46.  Moreover, Plaintiff contends that she is not required to present statistical evidence of a disparity in order to be entitled to "an injunction requiring the Board to publicly advertise vacancies, whether formal or informal, and fill them by a selection process that is not influenced by gender."  *Id.* at 45-46.

Recently, the Eleventh Circuit Court of Appeals discussed the showing required to establish a claim of disparate impact:

> [D]isparate impact theory prohibits neutral employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group. See Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L. Ed. 2d.2d 158 (1971) (explaining that Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation"); see also In re Employment, 198 F.3d at 1311; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1117 (11th Cir.1993).  . . . "[T]he premise of disparate impact theory is that some employment practices, adopted without a deliberately discriminatory motive, may be the functional equivalent of intentional discrimination." Joe's Stone Crab,

969 F. Supp. at 735. In essence, disparate impact theory is a doctrinal surrogate for eliminating unprovable acts of intentional discrimination hidden innocuously behind facially-neutral policies or practices.

The disparate impact framework under Title VII by now is well-settled. "Since *Griggs*, Congress has codified the appropriate burdens of proof in a disparate impact case in 42 U.S.C. § 2000e-2(k) (1994), and a settled jurisprudence has arisen to implement the methodology." *In re Employment*, 198 F.3d at 1311. As correctly identified by the district court, a plaintiff in a sex discrimination suit must establish three elements: first, that there is a significant statistical disparity between the proportion of women in the available labor pool and the proportion of women hired; second, that there is a specific, facially-neutral, employment practice which is the alleged cause of the disparity; and finally, and most critically in this case, that a causal nexus exists between the specific employment practice identified and the statistical disparity shown. *Joe's Stone Crab*, 969 F. Supp. at 735. *See generally MacPherson v. University of Montevallo*, 922 F.2d 766, 771 (11th Cir.1991)(citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 655- 56, 109 S. Ct. 2115, 2124, 104 L. Ed. 2d 733 (1989); *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994-95, 108 S. Ct. 2777, 2789, 101 L. Ed. 2d 827 (1988)).

According to Title VII, "[i]n the first stage of a disparate impact case, the 'complaining party [must] demonstrate [ ] that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.' " *In re Employment*, 198 F.3d at 1311 (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). "To 'demonstrate' means to 'meet[ ] the burdens of production and persuasion.' " *Id.* (quoting 42 U.S.C. § 2000e(m) (1994)). "In other words, in order to surmount the first hurdle in a disparate impact race discrimination case, the plaintiff must make out a prima facie case 'that [a] facially neutral employment practice ha[s] a significantly discriminatory impact.' " *Id.* (quoting *Connecticut v. Teal*, 457 U.S. 440, 446, 102 S. Ct. 2525, 2530, 73 L. Ed. 2d 130 (1982)). As the Supreme Court explained in *Watson*, "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson*, 487 U.S. at 994, 108 S. Ct. 2777 (emphasis added); *see also Edwards v. Wallace Community College*, 49 F.3d 1517, 1520 (11th

Cir.1995)(observing that "[a] plaintiff must identify a specific employment practice that leads to the disparate impact"); *MacPherson*, 922 F.2d at 771(noting that " 'a plaintiff must demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack' ") (internal citation omitted).

*E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274-75.

The Court agrees with Plaintiff's general argument that a plaintiff is not always required to submit statistical evidence in order to support a disparate impact claim. *Gibson v. Frank*, 946 F.2d 1229, 1233 (6th Cir. 1991); *Thomas v. Washington County School Board*, 915 F.2d 922, 926 (4th Cir. 1990). However, "there must be proof of disparity using the proper standards for comparison." *Gibson*, 946 F.2d at 1233 (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S. Ct. 2115, 104 L. Ed. 2d 733 (1989); *Hazelwood School District v. United States,* 433 U.S. 299, 308, 97 S. Ct. 2736, 2741-42, 53 L. Ed. 2d 768 (1977)). The proper comparison in a disparate-impact case is between " 'the [gender] composition of [the at-issue jobs] and the [gender] composition of the qualified . . . population in the relevant labor market.' " *Wards Cove Packing*, 490 U.S. at 650 (quoting *Hazelwood School District*, 433 U.S. at 308).

The record before this Court shows that, during the time at issue, significantly more men than women were chosen to fill the unpaid, part-time assistant principal position. For example, during Pirkle's tenure as principal of Cleburne County High School, he selected six individuals to serve in the unpaid assistant principal position, four of the six (or approximately 67%) individuals were men. However, there is no

evidence of the composition by gender of the relevant labor pool for such position and, therefore, there can be no inference of a disparity – much less a statistically significant disparity – in the selection of the unpaid, part-time assistant principal.

Because Plaintiff has not presented evidence sufficient to show a statistically significant disparity, Defendants' motion for summary judgment is due to be granted.

The Court finds that the selection process for the unpaid assistant principal position is a form of training that provides either a requirement for promotion to an administrative position or a highly desirable qualification for promotion to such position. Defendants admit that such experience is often the determining factor in promotion decisions. Although Plaintiff's complaint does not allege an action based on her failure to be selected for such unpaid administrative duties -- therefore, no such claim is before this Court -- the Court believes that the purely subjective procedure for selecting the unpaid, part-time assistant principal may indeed result in a significant statistical disparity based on gender of those selected for the position and also may be a mechanism for intentionally excluding women from administrative positions in Cleburne County schools. However, the evidence to support such a claim is not before this Court.

## V. **CONCLUSION**

For the reasons set forth above, the Court finds that Defendants' Motion for Summary Judgment (Doc. 16), as to all of Plaintiff's claims, is due to be granted.

The Court finds no existing disputed issue of material fact and that Defendants are entitled to judgment as a matter of law.

The Court will enter an Order contemporaneously herewith in accordance with this Memorandum Opinion granting summary judgment in favor of Defendants on all claims of Plaintiff.

DONE this __13th__ day of February, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE